# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# BIG STONE GAP DIVISION

| | | |
|---|---|---|
| **DRAYMON J. HALL JR.,** ) | | |
| Plaintiff ) | | |
| ) | | |
| v. ) | Civil Action No. 2:06cv00065 | |
| ) | **MEMORANDUM OPINION** | |
| ) | | |
| ) | | |
| **MICHAEL J. ASTRUE,**[1] ) | | |
| **Commissioner of Social Security,** ) | By: PAMELA MEADE SARGENT | |
| Defendant ) | United States Magistrate Judge | |

In this social security case, I affirm the final decision of the Commissioner denying benefits.

*I. Background and Standard of Review*

Plaintiff, Draymon J. Hall Jr., filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), denying plaintiff's claims for supplemental security income, ("SSI"), and disability insurance benefits, ("DIB"), under the Social Security Act, as amended, ("Act"), 42 U.S.C.A. § 423 and § 1381 *et seq.* (West 2003 & Supp. 2007). Jurisdiction of this court is pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). This case is before the undersigned magistrate judge upon transfer pursuant to the consent of the parties under 28 U.S.C. § 636(c)(1).

---

[1]Michael J. Astrue became the Commissioner of Social Security on February 12, 2007, and is, therefore, substituted for Jo Anne B. Barnhart as the defendant in this suit pursuant to Federal Rule of Civil Procedure 25(d)(1).

-1-

The court's review in this case is limited to determining if the factual findings of the Commissioner are supported by substantial evidence and were reached through application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence has been defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze,* 368 F.2d 640, 642 (4th Cir. 1966). "'If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."'" *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *Laws*, 368 F.2d at 642).

The record shows that Hall protectively filed his applications for SSI and DIB on or about October 4, 2004, alleging disability as of January 31, 2004, based on back problems, arthritis, knee pain and difficulty persisting at tasks. (Record, ("R."), at 66-69, 71, 91, 213-17.) The claims were denied initially and on reconsideration. (R. at 50-52, 56, 57-59, 220-22.) Hall then requested a hearing before an administrative law judge, ("ALJ"). (R. at 60.) The ALJ held a hearing on June 2, 2006, at which Hall was represented by counsel. (R. at 31-47.)

By decision dated June 22, 2006, the ALJ denied Hall's claims. (R. at 15-22.) The ALJ found that Hall met the nondisability insured status requirements of the Act for DIB purposes through the date of the decision. (R. at 21.) The ALJ found that Hall had not engaged in substantial gainful activity since the alleged onset of disability. (R. at 21.) The ALJ found that the medical evidence established that Hall had severe impairments, namely degenerative disc disease, arthritis and borderline

intellectual functioning, but he found that Hall's impairments did not meet or medically equal the requirements of any impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 18, 21.) The ALJ found that Hall's allegations regarding his limitations were not totally credible. (R. at 21.) The ALJ also found that Hall retained the functional capacity to perform simple, unskilled light[2] work that did not require repetitive squatting, kneeling or crawling. (R. at 21.) Thus, the ALJ found that Hall could not perform his past relevant work. (R. at 21.) Based on Hall's age, education, work experience and residual functional capacity and the testimony of a vocational expert, the ALJ concluded that Hall could perform jobs existing in significant numbers in the national economy, including those of a ticket seller, a cashier, a hand packer, a sorter and an assembler. (R. at 21-22.) Therefore, the ALJ found that Hall was not under a disability as defined in the Act, and that he was not eligible for benefits. (R. at 22.) *See* 20 C.F.R. §§ 404.1520(g), 416.920(g) (2007).

After the ALJ issued his decision, Hall pursued his administrative appeals, (R. at 10), but the Appeals Council denied his request for review. (R. at 6-8.) Hall then filed this action seeking review of the ALJ's unfavorable decision, which now stands as the Commissioner's final decision. *See* 20 C.F.R. §§ 404.981, 416.1481 (2007). The case is before this court on Hall's motion for summary judgment filed May 30, 2007, and on the Commissioner's motion for summary judgment filed June 28, 2007.

---

[2]Light work involves lifting items weighing up to 20 pounds at a time with frequent lifting or carrying of items weighing up to 10 pounds. If someone can perform light work, he also can perform sedentary work. *See* 20 C.F.R. §§ 404.1567(b), 416.967(b) (2007).

Case 2:06-cv-00065-PMS   Document 13   Filed 09/28/07   Page 3 of 17   Pageid#: 76

## II. Facts[3]

Hall was born in 1954, (R. at 34, 66), which classifies him as a "person closely approaching advanced age" under 20 C.F.R. §§ 404.1563(d), 416.963(d). He has a ninth-grade education[4] and past work experience as a heavy equipment mechanic. (R. at 34, 72.)

Hall testified that he quit working on January 31, 2004, because of back problems.[5] (R. at 35.) He stated that he had undergone back surgery in 1998, which helped his pain some, but he stated that he still experienced pain, especially with certain movements. (R. at 35.) Hall testified that he returned to work following his back surgery, but that his foreman allowed him to perform light-duty work for the last six or seven years that he was working. (R. at 36.) Hall testified that he took Ultram and Darvocet and that his back pain was constant without medication. (R. at 36.) He stated that these medications made the pain "bearable." (R. at 37.) He testified that his back pain radiated from his lower back down his right leg. (R. at 37.) Hall testified that he could not sit for long periods of time, and that his back pain required him to lie down for up to three times a day for up to 45 minutes at a time. (R. at 37-38.) He also stated that he had to switch positions to alleviate the pain. (R. at 38.)

---

[3]The relevant time period to this court's decision is January 31, 2004, Hall's alleged onset date, through June 22, 2006, the date of the ALJ's decision. Any medical information pertaining to any other time period is included only for clarity of the record.

[4]Although Hall reported on his Disability Report and testified at his hearing that he completed the ninth grade, he informed psychologist Edward E. Latham, Ph.D., that he completed the eighth grade. (R. at 34, 75, 189.)

[5]When questioned by the ALJ, Hall stated that he stopped working when his employer closed the business. (R. at 42-43.)

Hall testified that his back pain also interfered with his sleep, requiring him to get up at least twice nightly. (R. at 38.) He stated that he had difficulty lifting and carrying objects, noting that he could lift items weighing up to 10 pounds. (R. at 38-39.) However, Hall testified that he could not push or pull or reach overhead. (R. at 39.) He also stated that he could not kneel or squat, noting that his wife tied his shoes for him. (R. at 40.)

Hall testified that his wife performed all of the household chores and his son took care of the yard work. (R. at 40-41.) He stated that he sometimes rode to the grocery store with her, but that he seldom went inside. (R. at 40.) Hall testified that he was able to drive short distances. (R. at 41.) He stated that he enjoyed deer hunting in the past, but could no longer do so. (R. at 41.) He also stated that enjoyed target shooting. (R. at 41.)

Donna Bardsley, a vocational expert, also was present and testified at Hall's hearing. (R. at 44-46.) She classified Hall's past work as a heavy equipment mechanic as heavy[6] and skilled. (R. at 44.) She further stated that no skills would transfer to lighter duty work. (R. at 44.) Bardsley was asked to consider a hypothetical individual of Hall's age, education[7] and work background who could perform light work, who could not repetitively squat, kneel or crawl and who could perform simple, unskilled jobs. (R. at 45.) Bardsley testified that such an individual

---

[6]Heavy work involves lifting items weighing up to 100 pounds at a time with frequent lifting or carrying of items weighing up to 50 pounds. If someone can perform heavy work, he also can perform medium, light and sedentary work. *See* 20 C.F.R. §§ 404.1567(d), 416.967(d) (2007).

[7]Bardsley specified a ninth-grade education. (R. at 45.)

could perform jobs existing in significant numbers in the national economy, including those of a ticket seller, a cashier, a hand packager, a sorter and an assembler. (R. at 45.) Bardsley testified that an individual with the restrictions set forth in the physical assessment of Teresa Gardner, a family nurse practitioner, would not be able to perform these jobs. (R. at 45-46.)

In rendering his decision, the ALJ reviewed records from Virginia Public Schools; Appalachian Orthopaedic Associates, P.C.; Bristol Regional Medical Center; Highlands Spine Institute; St. Mary's Outpatient Clinic; Outpatient Diagnostic Group; Dr. Kevin Blackwell, D.O.; Dr. Robert O. McGuffin, M.D., a state agency physician; Dr. Frank M. Johnson, M.D., a state agency physician; Stone Mountain Health Services; Edward E. Latham, Ph.D.; Teresa Gardner, F.N.P.; and St. Mary's Outpatient Health Wagon.

Hall saw Dr. Kevin Blackwell, D.O., on December 10, 2004, for a musculoskeletal examination. (R. at 172-77.) Hall stated that he had undergone back surgery, but continued to experience back pain. (R. at 172.) He further stated that he experienced occasional radiation of pain into the right leg. (R. at 172.) Hall denied bowel or urinary dysfunction, weakness, fever or chills. (R. at 172.) He further informed Dr. Blackwell of pain in the left knee and left shoulder after falling from a ladder the previous year. (R. at 172.) He denied any locking or giving away, but described pain with squatting. (R. at 172.) Dr. Blackwell noted that Hall did not appear to be in any acute distress. (R. at 173.) He was alert, cooperative and fully oriented. (R. at 173.) Dr. Blackwell noted that Hall's gait was symmetrical and balanced. (R. at 174.) His shoulder and iliac crest heights were good and equal

bilaterally. (R. at 174.) Hall exhibited tenderness along the L4-L5 region of the spine, but no spasm or obvious deformities were noted. (R. at 174.) Upper and lower extremities were normal for size, shape, symmetry and strength. (R. at 174.) No effusions were noted, testing of the knees was normal and compression testing was negative. (R. at 174.) Hall's grip strength was good, as was his fine motor movement skills of the hands. (R. at 174.) Hall's reflexes were 2/4 in the upper and lower extremities, and Romberg's sign[8] was negative. (R. at 174.) Dr. Blackwell noted diminished flexion of the dorsolumbar spine and diminished abduction and forward elevation of the left shoulder. (R. at 176.) An x-ray of Hall's lumbar spine showed mild degenerative change in disc space narrowing at the L1-L2, L4-L5 and T12-L1 levels of the spine. (R. at 178.) Mild degenerative spurring at the same levels also was noted. (R. at 178.) Dr. Blackwell diagnosed Hall with left knee pain, left shoulder pain and chronic low back pain. (R. at 174.) He advised Hall to avoid lifting items weighing more than 50 pounds at a time and items weighing more than 20 pounds frequently. (R. at 174.) Dr. Blackwell further advised him to avoid repetitive squatting, kneeling and crawling. (R. at 174.) Dr. Blackwell opined that Hall was able to sit for eight hours in an eight-hour workday and stand for eight hours in an eight-hour workday, assuming normal positional changes. (R. at 174-75.) He noted no limitations on Hall's hand usage. (R. at 175.)

Dr. Robert O. McGuffin, M.D., a state agency physician, completed a physical residual functional capacity assessment on February 10, 2005. (R. at 179-85.) Dr.

---

[8]Romberg's sign is a swaying of the body or falling when standing with the feet close together and the eyes closed. Observed in individuals with a slowly progressive degeneration of the posterior columns and posterior roots and ganglia of the spinal cord. *See* DORLAND'S ILLUSTRATED MEDICAL DICTIONARY, ("Dorland's"), 1525, 1658 (27th ed. 1988).

McGuffin found that Hall could perform medium work.[9] (R. at 180.) He opined that Hall could never climb ramps and stairs and could occasionally climb ladders, ropes and scaffolds. (R. at 181.) Dr. McGuffin restricted Hall to occasional bending. (R. at 185.) He imposed no manipulative, visual, communicative or environmental limitations. (R. at 181-82.) Dr. McGuffin found Hall's statements only partially credible. (R. at 185.) This assessment was affirmed by Dr. Frank M. Johnson, M.D., another state agency physician, on April 20, 2005. (R. at 185.)

Hall was seen at Stone Mountain Health Services on April 7, 2005, with complaints of back pain and arthritis pain. (R. at 186-87.) On physical examination, Hall exhibited no costovertebral angle tenderness. (R. at 186.) He exhibited increased pain on straight leg raising. (R. at 186.) He was diagnosed with chronic low back pain secondary to disc disease at the L4-L5 level of the spine, chronic right ankle pain and chronic left knee pain. (R. at 187.) He was prescribed Ultram. (R. at 187.)

Hall saw Edward E. Latham, Ph.D., a clinical psychologist, on December 12, 2005, for a psychological evaluation. (R. at 189-93.) Among other things, Latham's notes show that Hall drove himself to the evaluation, and he denied any difficulty driving. (R. at 189.) Latham noted that Hall was alert and adequately oriented. (R. at 189.) He persevered on difficult tasks, and his graphomotor abilities were not significantly impaired. (R. at 189.) Hall reported that he walked "down the road" in the mornings to stretch. (R. at 190.) He further reported target shooting in an area behind his house. (R. at 190.) He stated that he watched television and went out to

---

[9]Medium work involves lifting items weighing up to 50 pounds at a time with frequent lifting or carrying of items weighing up to 25 pounds. If someone can perform medium work, he also can perform light and sedentary work. *See* 20 C.F.R. §§ 404.1567(c), 416.967(c) (2007).

-8-

eat at fast food restaurants. (R. at 190.)

On August 11, 2005, Hall saw Teresa Roatsey, a family nurse practitioner at Stone Mountain Health Services, for refills of Ultram and Darvocet. (R. at 197-200.) However, Roatsey noted that Hall had been discontinued from taking Darvocet the previous month. (R. at 197.) Hall was ambulatory and in no acute distress. (R. at 197.) He had a full range of motion and was able to heel walk on the right foot. (R. at 197.) Deep tendon reflexes were 2+ and equal bilaterally. (R. at 197.) Hall was able to climb up and down from the exam table without difficulty, and he walked to the exam room without difficulty. (R. at 197.) Roatsey noted no edema or cyanosis. (R. at 197.) Hall was diagnosed with chronic back pain. (R. at 197.) When Roatsey refused to fill his prescriptions, Hall became very agitated and refused lab work and "any means of [p]hysical [t]herapy."[10] (R. at 197.)

On November 16, 2005, Hall was seen at St. Mary's Outpatient Health Wagon requesting a refill of Ultram. (R. at 207.) No cyanosis, clubbing or edema was noted, but Hall exhibited crepitus of the left knee. (R. at 207.) He was diagnosed with chronic low back pain and dyspnea. (R. at 207.) He was prescribed Ultram. (R. at 207.)

Hall saw Teresa Gardner, a family nurse practitioner, on April 26, 2006, for medication refills. (R. at 206.) Crepitus again was noted in the left knee. (R. at 206.)

---

[10]At his hearing, Hall stated that he refused lab work because it was unrelated to his back problems. (R. at 43.) He further stated that he refused physical therapy because his surgeon had informed him that it could cause a disc in his back to rupture. (R. at 43-44.) None of this is reflected in Roatsey's treatment notes.

-9-

Hall was diagnosed with chronic lumbar pain and chronic knee pain and was prescribed Ultram. (R. at 206.) Gardner also completed a physical assessment, indicating that Hall could occasionally and frequently lift and carry items weighing less than 10 pounds. (R. at 202-04.) She opined that he could stand and/or walk for less than two hours in an eight-hour workday and could sit for less than six hours in an eight-hour workday. (R. at 203.) Gardner found that Hall was limited in his ability to push and/or pull with both his upper and lower extremities. (R. at 203.) She found that he could never climb, kneel, crouch, crawl or stoop, but could occasionally balance. (R. at 203.) Gardner opined that Hall could occasionally reach, handle and perform fine manipulation. (R. at 203.) She found that Hall's ability to be around vibration and hazards was limited. (R. at 204.)

### III. Analysis

The Commissioner uses a five-step process in evaluating DIB and SSI claims. *See* 20 C.F.R. §§ 404.1520, 416.920 (2007); *see also Heckler v. Campbell*, 461 U.S. 458, 460-62 (1983); *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981). This process requires the Commissioner to consider, in order, whether a claimant 1) is working; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of a listed impairment; 4) can return to his past relevant work; and 5) if not, whether he can perform other work. *See* 20 C.F.R. §§ 404.1520, 416.920 (2007). If the Commissioner finds conclusively that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a) (2007).

Under this analysis, a claimant has the initial burden of showing that he is unable to return to his past relevant work because of his impairments. Once the claimant establishes a prima facie case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must then establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience and impairments, to perform alternative jobs that exist in the national economy. *See* 42 U.S.C.A. §§ 423(d)(2)(A), 1382c(a)(3)(A)-(B) (West 2003 & Supp. 2007); *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983); *Hall*, 658 F.2d at 264-65; *Wilson v. Califano*, 617 F.2d 1050, 1053 (4th Cir. 1980).

By decision dated June 22, 2006, the ALJ denied Hall's claims. (R. at 15-22.) The ALJ found that the medical evidence established that Hall had severe impairments, namely degenerative disc disease, arthritis and borderline intellectual functioning, but he found that Hall's impairments did not meet or medically equal the requirements of any impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 18, 21.) The ALJ also found that Hall retained the functional capacity to perform simple, unskilled light work that did not require repetitive squatting, kneeling or crawling. (R. at 21.) Thus, the ALJ found that Hall could not perform his past relevant work. (R. at 21.) Based on Hall's age, education, work experience and residual functional capacity and the testimony of a vocational expert, the ALJ concluded that Hall could perform jobs existing in significant numbers in the national economy, including those of a ticket seller, a cashier, a hand packer, a sorter and an assembler. (R. at 21-22.) Therefore, the ALJ found that Hall was not under a disability as defined in the Act, and that he was not eligible for benefits. (R. at 22.) *See* 20 C.F.R. §§ 404.1520(g), 416.920(g) (2007).

-11-

Case 2:06-cv-00065-PMS   Document 13   Filed 09/28/07   Page 11 of 17   Pageid#: 84

Hall argues that the ALJ erred by finding that he retained the residual functional capacity to perform simple, unskilled light work that did not require repetitive squatting, kneeling or crawling. (Plaintiff's Motion For Summary Judgment And Memorandum Of Law, ("Plaintiff's Brief"), at 6-9.) Specifically, Hall argues that the ALJ erred by failing to place any bending limitations on him despite Dr. McGuffin's opinion that he could only occasionally bend. (Plaintiff's Brief at 8.) Hall also argues that the ALJ erred by failing to properly analyze his subjective complaints of pain. (Plaintiff's Brief at 10-13.) Hall does not contest the ALJ's finding with regard to his mental residual functional capacity.

As stated above, the court's function in this case is limited to determining whether substantial evidence exists in the record to support the ALJ's findings. The court must not weigh the evidence, as this court lacks authority to substitute its judgment for that of the Commissioner, provided his decision is supported by substantial evidence. *See Hays*, 907 F.2d at 1456. In determining whether substantial evidence supports the Commissioner's decision, the court also must consider whether the ALJ analyzed all of the relevant evidence and whether the ALJ sufficiently explained his findings and his rationale in crediting evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

Thus, it is the ALJ's responsibility to weigh the evidence, including the medical evidence, in order to resolve any conflicts which might appear therein. *See Hays,* 907 F.2d at 1456; *Taylor v. Weinberger*, 528 F.2d 1153, 1156 (4th Cir. 1975). Furthermore, while an ALJ may not reject medical evidence for no reason or for the wrong reason, *see King v. Califano*, 615 F.2d 1018, 1020 (4th Cir. 1980), an ALJ may, under the

-12-

regulations, assign no or little weight to a medical opinion, even one from a treating source, based on the factors set forth at 20 C.F.R. §§ 404.1527(d), 416.927(d), if he sufficiently explains his rationale and if the record supports his findings.

The objective medical evidence of record during the relevant time period demonstrates that Hall did not present to any medical source in any acute distress. (R. at 173, 197.) Although he exhibited some tenderness of the lumbar spine in December 2004, no spasm or obvious deformities were noted at that time. (R. at 174.) He also has exhibited normal strength and deep tendon reflexes. (R. at 174, 197.) Hall's grip strength was good. (R. at 174.) Some crepitus in the left knee was noted, as was some decreased range of motion of the dorsolumbar spine and left shoulder. (R. at 176, 206-07.) However, objective medical testing revealed only mild degenerative changes in the spine with some associated spurring. (R. at 178.) Hall was diagnosed with chronic low back pain, chronic left knee pain, left shoulder pain, chronic right ankle pain and dyspnea. (R. at 174, 187, 197, 206-07.) He was treated conservatively with medications and was even taken off of Darvocet in July 2005. (R. at 197.) Moreover, Hall has never been prescribed any assistive devices such as a cane or a walker.

The ALJ's physical residual functional capacity finding is further supported by the state agency physicians' assessment. (R. at 179-85.) In February 2005 and April 2005, Drs. McGuffin and Johnson concluded that Hall could perform medium work. (R. at 180.) Thus, the ALJ clearly gave Hall the benefit of the doubt by finding that he could perform only a diminished range of light work. The ALJ's physical residual functional capacity finding also is corroborated by Hall's reported activities. Specifically, he stated in a Function Report, dated October 29, 2004, that he walked

outside as often as he could, he was able to drive a car and he enjoyed target shooting two or three times weekly. (R. at 80-87.) He also stated that he could walk for half a mile without interruption. (R. at 85.) I further note that Hall refused physical therapy and lab work on August 11, 2005. (R. at 197.) The regulations clearly state that in order to obtain benefits, a claimant must follow prescribed treatment. *See* 20 C.F.R. §§ 404.1530, 416.930 (2007).

Next, I find Hall's argument that the ALJ erred by failing to take into account Dr. McGuffin's finding that he could only occasionally bend in determining his residual functional capacity unpersuasive. As noted in the Commissioner's brief, Social Security Ruling 85-15 states that stooping, kneeling, crouching and crawling are progressively more strenuous forms of bending parts of the body. *See* S.S.R. 85-15, WEST'S SOCIAL SECURITY REPORTING SERVICE, Rulings 1983-1991 (West 1992). Social Security Ruling 83-14 states that most light jobs require no crouching and only occasional stooping. *See* S.S.R. 83-14, WEST'S SOCIAL SECURITY REPORTING SERVICE, Rulings 1983-1991 (West 1992). Similarly, S.S.R. 85-15 notes that some stooping, which is defined as bending the body downward and forward by bending the spine at the waist, is required to do almost any kind of work. *See* S.S.R. 85-15, WEST'S SOCIAL SECURITY REPORTING SERVICE, Rulings 1983-1991 (West 1992). If a person can stoop occasionally, which is defined as from very little up to one-third of the time, the sedentary and light occupational base is virtually intact. *See* S.S.R. 85-15, WEST'S SOCIAL SECURITY REPORTING SERVICE, Rulings 1983-1991 (West 1992). This also is true for crouching, which is defined as bending the body downward and forward by bending both the legs and spine. *See* S.S.R. 85-15, WEST'S SOCIAL SECURITY REPORTING SERVICE, Rulings 1983-1991 (West 1992). Crawling

on hands and knees and feet is a relatively rare activity even in arduous work, and limitations on the ability to crawl would be of little significance in the broad world of work. *See* S.S.R. 85-15, WEST'S SOCIAL SECURITY REPORTING SERVICE, Rulings 1983-1991 (West 1992). This also is true of kneeling, which is defined as bending the legs at the knees to come to rest on one or both knees. *See* S.S.R. 85-15, WEST'S SOCIAL SECURITY REPORTING SERVICE, Rulings 1983-1991 (West 1992).

Here, the jobs enumerated by the vocational expert were all at the light level of exertion. (R. at 45.) That being said, it is clear that the ALJ's restricting Hall to the performance of light work took into account an ability to only occasionally bend. In other words, despite such a limitation, the vocational expert found that there was a significant number of jobs in the national economy that Hall could perform, thereby precluding a finding of disability and award of benefits.

For all of the foregoing reasons, I find that substantial evidence supports the ALJ's finding that Hall retained the physical functional capacity to perform the exertional requirements of light work.

Hall next argues that the ALJ failed to properly analyze his allegations of disabling pain. (Plaintiff's Brief at 10-13.) For the following reasons, however, I find that substantial evidence supports the ALJ's pain analysis. The Fourth Circuit has adopted a two-step process for determining whether a claimant is disabled by pain. First, there must be objective medical evidence of the existence of a medical impairment which could reasonably be expected to produce the actual amount and degree of pain alleged by the claimant. *See Craig v. Chater*, 76 F.3d 585, 594 (4th Cir.

1996). Second, the intensity and persistence of the claimant's pain must be evaluated, as well as the extent to which the pain affects the claimant's ability to work. *See Craig*, 76 F.3d at 595. Once the first step is met, the ALJ cannot dismiss the claimant's subjective complaints simply because objective evidence of the pain itself is lacking. *See Craig*, 76 F.3d at 595. This does not mean, however, that the ALJ may not use objective medical evidence in evaluating the intensity and persistence of pain. In *Craig*, the court stated:

> Although a claimant's allegations about h[is] pain may not be discredited solely because they are not substantiated by objective evidence of pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges []he suffers. ...

*Craig*, 76 F.3d at 595. The ALJ stated in his opinion that he was "giv[ing] the claimant every benefit of the doubt in considering his allegations of pain and other limitations in limiting him to light work." (R. at 19.) He further stated that he "ha[d] also considered all symptoms, including pain, and the extent to which these symptoms [could] reasonably be accepted as consistent with the objective medical evidence and other evidence based on the [regulations]. ..." (R. at 19.) The ALJ found Hall's allegations incredible to the extent alleged. (R. at 19.) He found that Hall had impairments that could reasonably be expected to cause him some pain or discomfort, but not to the degree alleged. (R. at 19.) In reaching such a conclusion, the ALJ noted that Hall's failure to comply with prescribed physical therapy significantly detracted from his complaints of pain. (R. at 19.) The ALJ further noted Hall's request for refills of narcotic pain medications which he had been discontinued from taking and

-16-

that he became very agitated when the same was denied. (R. at 19.) The ALJ further noted that, despite Hall's allegations of daily pain, he did not see a physician on a regular basis. (R. at 19.) Moreover, although Hall initially testified that he stopped working due to back pain, he later stated that his employer had closed the business. (R. at 19-20.) Further, as the ALJ noted in his decision, radiological findings were minimal, showing only mild degenerative changes and some spurring at various levels of the spine. (R. at 20.) No nerve root compression was ever found. Finally, the evidence of record reveals that Hall could walk without difficulty and with no assistive devices. (R. at 20.)

For all of these reasons, I find that substantial evidence supports the ALJ's analysis of Hall's allegations of disabling pain in reaching his decision that Hall was not disabled.

### IV. Conclusion

For the foregoing reasons, Hall's motion for summary judgment will be denied, the Commissioner's motion for summary judgment will be granted, and the Commissioner's decision denying benefits will be affirmed.

An appropriate order will be entered.

DATED: This 28th day of September 2007.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE